Daniel Cooper (Bar No. 153576)
Layne Friedrich (Bar No. 195431)
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: cleanwater@sfo.com
          layne@lawyersforcleanwater.com

Christopher Sproul (Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com

Attorneys for Plaintiffs
BAYKEEPER and
WEST COUNTY TOXICS COALITION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYKEEPER, a non-profit corporation, and; WEST COUNTY TOXICS COALITION, a non-profit organization, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF RICHMOND, a municipal corporation; WEST COUNTY WASTEWATER DISTRICT, an independent special district; VEOLIA WATER NORTH AMERICA OPERATING SERVICES, a limited liability corporation; WEST COUNTY AGENCY, a joint powers agency, <br><br> Defendants. | Civil Case No.: <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

Baykeeper and West County Toxics Coalition by and through their counsel, hereby allege:

## I.   JURISDICTION AND VENUE

1.     This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. Sections 1251 *et seq*. (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C.  § 1331 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.     On July 14, 2005, Baykeeper and West County Toxics Coalition ("Plaintiffs") issued a 60-day notice letter ("Notice Letter") to the City of Richmond ("Richmond"), Veolia Water North America Operating Services, L.L.C. ("Veolia"), the West County Wastewater District ("WCWD"), and the West County Agency ("WCA") (collectively "Defendants") regarding their violations of the Clean Water Act, and of Plaintiffs' intention to file suit against the Defendants.  Pursuant to 33 U.S.C. § 1365(b)(1)(A) of the CWA, Plaintiffs also served the Notice Letter on the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board").

3.     More than sixty days have passed since the Notice Letter was served on the Defendants and the State and Federal agencies.  Plaintiffs are informed and believe, and thereon allege, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint.

4.     Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the source of the violations is located within this judicial district.

## II.   INTRODUCTION

5.     The CWA violations at issue are: (1) violations of National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0038539, Order No. 01-144,  ("2001 Joint Permit"); (2) violations of NPDES Permit No. CA0038539, 94-014 ("1994 Joint Permit"); (3) violations of the City of Richmond's municipal separate storm sewer system ("MS4") NPDES Permit No. CA0029912,

Order No. R2-2003-0022, Amending Order No. 99-058,[1] ("MS4 Permit") and (4) discharges of pollutants to waters of the United States without NPDES Permit authorization in violation of CWA § 301(a), 33 U.S.C. § 1311(a). The 2001 Joint Permit was adopted in 2001 and replaced the 1994 Joint Permit. Both the 1994 Joint Permit and the 2001 Joint Permit regulate Richmond's sewage collection system and sewage wastewater treatment plant ("Richmond WWTP"), Veolia's operation of the Richmond collection system and the Richmond WWTP, WCWD's operation of its sewage collection system and wastewater treatment plant ("WCWD WWTP"), and the WCA's operation of the Confluence Structure, dechlorination facility, and the WCA discharge outfall which receives wastewater from the Richmond WWTP and the WCWD WWTP. The MS4 Permit regulates the City of Richmond's MS4 and Veolia's operation of the MS4. The violations concern discharges of inadequately treated sewage, discharges of raw sewage, discharges of non-storm water, bypasses of inadequately treated sewage, violations of effluent limitations and failure to adequately report discharges of raw and/or inadequately treated sewage.

## III.  **PARTIES**

6.   Plaintiff Baykeeper is a non-profit public benefit corporation whose mission is to protect and enhance the water quality of the San Francisco Bay-Delta Estuary and its tributaries for the benefit of its ecosystems and the surrounding human communities. Baykeeper accomplishes its mission through education, advocacy, restoration, and enforcement. Baykeeper's office is located at 55 Hawthorne Street in San Francisco, California.

7.   West County Toxics Coalition ("WCTC") is a nonprofit, multi-racial membership organization founded in 1986 to empower low and moderate-income residents to exercise greater control over environmental problems that impact their quality of life in Contra Costa County, particularly West Contra Costa County in Northern California. WCTC seeks to protect the communities of West Contra Costa County against toxic threats in the area. WCTC's office is located at 1019 MacDonald Avenue in Richmond, California.

---

[1]    Note the Amendment to the MS4 permit lists the permit No. as CAS0029912.

8.      Plaintiffs' members live and/or recreate in and around the San Francisco Bay area including using and enjoying the beaches and waters in and around the City of Richmond, including, but not limited to, San Francisco Bay, San Pablo Bay, the Richmond Inner Harbor, Santa Fe Channel, the Ford Channel, Hilltop Lake and San Pablo Creek and/or their tributaries ("the Receiving Waters").

9.      Plaintiffs' members use and enjoy the San Francisco Bay area waters for recreational, scientific, aesthetic, educational, conservation and commercial purposes, including, but not limited to, recreational fishing, boating, kayaking, sailing, surfing, windsurfing, fish and wildlife observation, photography, and/or hiking on a continuing and ongoing basis.

10.     Plaintiffs' members use and enjoyment of the Receiving Waters has been and continues to be adversely impacted by the ongoing sanitary sewer overflows ("SSOs"), discharges of inadequately treated wastewater, and discharges of non-storm water and storm water contaminated with sewage.  Degradation of water quality and harm to aquatic life in any of the Receiving Waters impairs the Plaintiffs' members' use and enjoyment of those waters.

11.     The interests of Plaintiffs' members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act.  Plaintiffs have no adequate remedy at law.

12.     The City of Richmond is a municipality incorporated under the laws of the State of California.  The City of Richmond's Municipal Sanitary Sewer District ("RMSD") is a department of Richmond's Public Services and operates Richmond's sewage collection system and sewage wastewater treatment plant.  The City of Richmond owns and operates the Richmond municipal separate storm sewer system.  RMSD has offices at 601 Canal Blvd., in Richmond, California.

13.     Veolia is a limited liability corporation with an office at 14950 Heathrow Forest Parkway, Ste. 200, Houston, Texas 77032.  On May 14, 2002, Richmond contracted out the operation of the Richmond WWTP to U.S. Filter, a corporation that was purchased by Veolia in 1999, but continued to operate under the U.S. Filter name until 2004.  On June 17, 2002, U.S. Filter notified the Regional Board that U.S. Filter would be responsible for meeting the City of Richmond's 2001 Joint Permit requirements.  On February 25, 2004, U.S. Filter officially changed its name to Veolia Water North America Operating Services, LLC.  U.S. Filter's name change to Veolia did not involve the sale

or transfer of assets, but was instead merely a corporate name change.  Accordingly, Veolia is liable for all violations as the manager and operator of the Richmond WWTP that occurred from June 17, 2002, to the present.  On October 15, 2004, Richmond expanded Veolia's contract to incorporate the management of Richmond's sewage collection system and MS4.  Accordingly, Veolia is liable for all violations of the MS4 Permit as the manager and operator of the Richmond collection system and MS4 that have occurred from October 15, 2004 to the present.

14.     The WCWD is an independent special district with a five-member elected board of directors.  The WCWD is located at 2910 Hilltop Drive, in Richmond, California.  WCWD owns and operates a sewage collection and treatment system in a service area that serves the northern suburbs of Richmond, the City of San Pablo, portions of the City of Pinole, and the communities of El Sobrante, East Richmond Heights, Tara Hills, Rolling Wood, and Bayview.

15.     WCA is a joint powers agency.  Richmond and WCWD entered into a joint powers agreement that created WCA.

## IV.   STATEMENT OF FACTS

16.     Plaintiffs are informed and believe, and thereon allege, that Richmond's sewage collection system consists of approximately 300 miles of sewer line, with 12 pumping stations that send sewage to the Richmond WWTP.  Richmond and Veolia are responsible for approximately half of the sewer lines within Richmond's city boundaries.  Richmond and Veolia have a service population of approximately 64,000.

17.     Plaintiffs are informed and believe, and thereon allege, that causes of Richmond's collection system and WWTP's longstanding problems include, but are not limited to, mismanagement, neglect of environmental justice concerns, deteriorating sewage infrastructure, possible under-funding of repairs, excessive wet-weather infiltration and inflow ("I&I") of rainwater and rising groundwater into sewer pipes overwhelming the capacity of the sewer system, inadequate sewer line and pump station operations and maintenance, and ineffective control of the introduction of fats, oil and grease ("FOG") into sewer lines.

18.     Plaintiffs are informed and believe, and thereon allege, that most of Richmond's and Veolia's spills from the collection system are "dry weather" spills, i.e., spills caused by problems other

than an inadequate capacity to handle peak wet-weather flows.  Richmond's service-call out reports indicate that line blockages cause most of the collection system dry-weather spills.  FOG is the most frequently specified cause of such line blockages.  Roots and rock blockages are the next most-frequent causes.  Broken sewer lines are listed as another significant cause of SSOs.

19.    Plaintiffs are informed and believe, and thereon allege, that Richmond and Veolia also have spills related to wet-weather I&I.  The service-call out reports reveals several clusters of wet-weather spills, indicating that Richmond's collection system faces clearly identifiable wet weather flow bottlenecks.  Plaintiffs are informed and believe, and thereon allege, that Richmond's collection system either is not performing to the level reflected by the design storm standards for the system and/or that these standards are inadequate.

20.    Plaintiffs are informed and believe, and thereon allege, that Richmond's MS4 consists of numerous storm drain inlets that lead to underground storm drain pipes which in turn are directed to San Francisco Bay, San Pablo Bay, Richmond Inner Harbor, the Santa Fe Channel, Hilltop Lake, and San Pablo Creek.

21.    Plaintiffs are informed and believe, and thereon allege, that raw or partially treated sewage is frequently discharged into Richmond's MS4 from the Richmond and the WCWD sewage collection systems, from Richmond's WWTP and/or from private lateral lines connected to the collection systems.

22.    Plaintiffs are informed and believe, and thereon allege, that sewage spills entering the MS4 from Richmond's sewage collection system or from third party sewage conveyance appurtenances (such as privately owned sewage lateral lines connecting to Richmond's sewage collection system and clean-outs for such lines) discharge to the Receiving Waters.

23.    Plaintiffs are informed and believe, and thereon allege, that WCWD owns and operates a sewage collection and treatment system in a service area that serves the northern suburbs of Richmond, the City of San Pablo, portions of the City of Pinole, and the communities of El Sobrante, East Richmond Heights, Tara Hills, Rolling Wood, and Bayview.  The WCWD collection system consists of 235 miles of gravity mainlines, 11 miles of force mainlines, and 17 pumping stations.

24.     Plaintiffs are informed and believe, and thereon allege, that the WCWD also operates the WCWD WWTP.  WCWD has a service population of 85,000.

25.     Plaintiffs are informed and believe, and thereon allege, that WCWD has been and continues to discharge raw sewage from its collection system to the Receiving Waters and the Richmond MS4 and MS4s owned and operated by other municipalities in its service area.  Information currently available to the Plaintiffs further indicates that WCWD has taken inadequate steps to eliminate these violations.  Specifically, WCWD has failed to adequately operate, maintain, repair, or update the collection system that is the cause of these violations.  Further, WCWD has failed to allocate necessary funds to address the condition of the sewer system that causes the violations.  Due to the lack of resources allocated to maintain and repair the collection system, it is certain that these violations will continue in the future.

26.     Plaintiffs are informed and believe, and thereon allege, that Richmond and WCWD have entered into a joint powers agreement that created WCA, a joint powers agency.  Richmond, Veolia and WCWD route treated sewage from their respective WWTPs to a WCA-owned and operated Confluence Structure located at the western boundary of the Richmond WWTP.

27.     Plaintiffs are informed and believe, and thereon allege, that WCA, on behalf of Richmond, Veolia, and WCWD, thereafter combines and treats the effluent from the Richmond WWTP and from the WCWD WWTP at the Confluence Structure and then discharges this combined effluent through a 72-inch discharge outfall and diffuser located 4,700 feet into central San Francisco Bay.

28.     San Francisco Bay is an ecologically sensitive water body and a defining feature of Northern California.  San Francisco Bay is an important and heavily used resource, with special aesthetic and recreational significance for people living in the surrounding communities.  Aquatic sports are very popular in the Bay Area.  The San Francisco Bay shoreline has numerous highly valued lagoons with beaches and public access that offer unique recreational opportunities for swimmers, kayakers, and windsurfers.  The large-scale urbanization of the Bay Area makes these recreational and aesthetic uses even more important to the quality of life of Bay Area residents.  All of the surrounding counties have set aside public parks along the shoreline.  Recreational use of San Francisco Bay is

increasing as communities create new parks, such as Eastshore State Park.  However, the San Francisco Bay's water quality is impaired and continues to decline.  The Bay's once-abundant and varied fisheries and species habitat have been drastically degraded and diminished by pollution and development.

29.     Spills of raw or partially treated sewage and discharges of sewage-contaminated storm water harm San Francisco Bay and pose a serious risk to fisheries, wildlife habitat, and human health.  In addition to human waste and pathogenic bacteria, viruses, mold spores, and protozoa, SSOs contain chemicals that cause cancer or reproductive toxicity.  These chemicals come from solvents, detergents, cleansers, inks, pesticides, paints, pharmaceuticals, and other chemicals used by households and businesses and then discarded to sewage collection systems.  High concentrations of these pollutants are typically found in discharges of raw sewage.  The East Bay Regional Park District has reported at least three beach closures as a direct result of a SSO from Richmond or WCWD's sewage collection system.  Richmond's own spill reports indicate another beach closure as a result of a SSO.  The intensive use of the Bay for commercial and sport fishing, shellfish harvesting, and water-contact recreation increases the likelihood that people will come into direct contact with spilled sewage and the pollutants it contains.  Sewage pollution also affects people who eat fish caught in the Bay.  Toxic chemicals are concentrated in the San Francisco Bay's food web, which means that contaminants absorbed by plankton are magnified in fish and birds farther up the food chain and ultimately transferred to human consumers.  Contamination of fish is particularly damaging to minority and poor people, who eat a greater-than-average amount of fish.

30.     SSOs that do not directly reach the Bay still pose significant health risks by depositing raw sewage in public streets, public buildings and grounds, and private yards and homes.  SSOs contain large quantities of pathogenic bacteria, viruses, mold spores, and protozoa.  Exposure to raw or partially treated sewage can cause a variety of health problems, including gastroenteritis, respiratory illness, ear, nose, and throat problems, and skin rashes.  Mold spores can establish mold growth in homes and other buildings when they are carried onto private property during an SSO, creating an ongoing health risk from chronic exposure.  Sewage contaminated waters also may provide a breeding

ground for disease-vector mosquitoes.  SSOs also diminish property values and impose severe nuisance on local residents.

## V.  STATUTORY BACKGROUND

### A.  The Clean Water Act

31.  Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

32.  Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating municipal storm water discharges under NPDES permits.  Section 402(p) of the CWA requires an NPDES permit for storm water discharges from a MS4 to waters of the United States.

33.  Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person," including individuals acting in their official state capacity, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. §§1365(a)(1) and 1362(5).

34.  An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a).

## VI.  ALLEGATIONS

### FIRST CAUSE OF ACTION

**Claim Against Richmond and Veolia for Discharges of Pollutants Without a Permit in Violation of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1365**

35.  Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

36.  Plaintiffs are informed and believe, and thereon allege, that Richmond has been discharging and continues to discharge untreated, raw sewage from the Richmond collection system into the Receiving Waters since at least July 14, 2000 and Veolia has been discharging and continues to discharge untreated, raw sewage from the Richmond collection system into the Receiving Waters since at least June 17, 2002.  In addition, Richmond has discharged treated wastes or wastewater, such as biosolids, at locations other than its NPDES permit authorized outfall.  For example, Plaintiffs are informed and believe, and thereon allege, that on September 24, 2000, Richmond discharged 60,850

gallons of sanitary sewage biosolids from an 18 year old, buried, glass lined ductile iron pipe into a Richmond storm drain channel on WCWD property adjacent to biosolids drying beds.  Plaintiffs are informed and believe, and thereon allege, that some of the biosolids then flowed into a marsh channel downstream of the storm drain channel; the marsh is a wetland adjacent and/or tributary to San Francisco Bay and thus a water of the United States.

37.    Plaintiffs are informed and believe, and thereon allege, that Richmond and Veolia do not possess an NPDES permit authorizing the discharge of untreated, raw sewage or biosolids or sanitary sewage-generated wastewaters from locations other than the designated permitted outfall.

38.    Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia therefore have violated the discharge prohibition of CWA Section 301(a) by discharging untreated, raw sewage and/or treated wastewater without NPDES permit authorization to Waters of the United States on at least 1,068 separate occasions totaling at least 1,068 days of violation, and that these violations are continuing.

39.    Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have taken inadequate affirmative steps to eliminate these violations, and the old, decrepit and outdated collection system that is the cause of these failures has remained essentially unchanged.  Richmond and Veolia have not replaced broken and old pipes.  Further, Richmond and Veolia have failed to allocate necessary funds to address the condition of the sewer system that causes the sewage spills. Because of the lack of resources allocated to replace the aging pipes, it is a virtual certainty that these intermittent and continuous violations will continue in the future.

40.    Each day since July 14, 2000, that Richmond has discharged, and continues to discharge raw sewage and other pollutants to waters of the United States without an NPDES permit authorizing such discharges is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

41.    Each day since June 17, 2002, that Veolia has discharged, and continues to discharge raw sewage and other pollutants to waters of the United States without a permit for such discharges is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

42.     By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

43.     An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Claim Against Richmond And Veolia for Discharge of Pollutants in Violation of NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365**
**(1994 Discharge Prohibition A.1 and A.5 and 2001 Discharge Prohibitions A.3, A.6 and A.1)**

44.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

45.     Plaintiffs are informed and believe, and thereon allege, that Richmond has been discharging and continues to discharge raw sewage from the Richmond collection system into the Receiving Waters since at least July 14, 2000 and Veolia has been discharging and continues to discharge raw sewage from the Richmond collection system into the Receiving Waters since at least June 17, 2002.  In addition, Richmond has discharged treated wastes or wastewater, such as biosolids, at locations other than its NPDES permit authorized outfall.

46.     Discharge Prohibition Section A.3 of the 2001 Joint Permit and Discharge Prohibition Section A.1 of the 1994 Joint Permit prohibit overflow of untreated or partially treated wastewater from the Richmond collection system to waters of the State.  The Receiving Waters are all waters of the State, and thus the 2001 Joint Permit and the 1994 Joint Permit prohibit SSOs to these Receiving Waters.

47.     Discharge Prohibitions Section A.1 of the 2001 Joint Permit further prohibits the discharge of treated wastewater at a location or in a manner different from that authorized by the 2001 Joint Permit, and Discharge Prohibition A.6 of the 2001 Joint Permit prohibits the discharge of any

"water, materials, or wastes other than storm water, which are not otherwise authorized by an NPDES permit, to a storm drain system or waters of the State . . . ."  The 2001 Joint Permit does not authorize the discharge of biosolids from any location and does not authorize the discharge of any wastewaters except from the WCA outfall.  The 1994 Joint Permit, Discharge Prohibition Section A.5 prohibits the discharge of any "water, materials, or wastes other than storm water, which are not otherwise authorized by this NPDES permit, to a storm drain system or waters of the state . . . ." The 1994 Joint Permit did not authorize the discharge of biosolids from any location and did not authorize the discharge of any wastewaters except from the WCA outfall.  Accordingly, Richmond has violated Discharge Prohibition Section A.1 and A.6 of the 2001 Joint Permit and/or Discharge Prohibition Section A.5 of the 1994 Joint Permit by discharging treated wastewaters, including biosolids, from locations other than the WCA outfall.

48.     Plaintiffs are informed and believe, and thereon allege, that these discharges and violations are ongoing and it is likely that Richmond and Veolia will continue to violate these requirements without Court intervention.

49.     Prohibition Section A.1 and A.5 of the 1994 Joint Permit and Prohibition Sections A.1, A.3, and A.6 of the 2001 Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, every separate instance since July 14, 2000 when Richmond failed to comply with Discharge Prohibition Sections A.1 and A.5 of the 1994 Joint Permit, and Discharge Prohibition Sections A.1, A.3, and A.6 of the 2001 Joint Permit constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Likewise, every separate instance since June 17, 2002 when Veolia failed to comply with these Discharge Prohibitions constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

50.     By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

51.     An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION

**Claims Against Richmond And Veolia for Discharge of Pollutants in Violation of NPDES Permit Conditions and 33 U.S.C. §§ 1311(a), 1365 (1994 Discharge Prohibition A.4 and 2001 Discharge Prohibition A. 2)**

52.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

53.     Pursuant to the 1994 Joint Permit and the subsequent 2001 Joint Permit, Prohibition Section A.4 of the 1994 Joint Permit and Prohibition Section A.2 of the 2001 Joint Permit prohibits the discharge of wastewater that does not receive an initial dilution of at least 10:1 at all times during which the Delta outflow is greater than 8,000 cubic feet per second, and 45:1 when the Delta outflow is less than 8,000 cubic feet per second.

54.     Plaintiffs are informed and believe, and thereon allege, that since July 14, 2000 Richmond and/or Veolia have discharged untreated sewage in violation of the initial dilution requirements of Prohibition Section A.4 of the 1994 Joint Permit and Prohibition Section A.2 of the 2001 Joint Permit.

55.     Plaintiffs are informed and believe, and thereon allege, that these discharges are ongoing and it is likely that Richmond and Veolia will continue to violate these requirements without Court intervention.

56.     Prohibition Section A.4 of the 1994 Joint Permit and Prohibition Section A.2 of the 2001 Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, every separate instance since July 14, 2000 that Richmond has failed to comply with Discharge Prohibitions A.4 and A.2 constitutes a violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

Likewise, every separate instance since June 17, 2002 that Veolia has failed to comply with Discharge Prohibitions A.4 and A.2 constitutes a violation of a CWA effluent limitation and a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

57.     By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

58.     An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### Claims Against Richmond and Veolia for Violations of Monitoring and Reporting Requirements Imposed by NPDES Permit Conditions 33 U.S.C. §§ 1311(a), 1365

59.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

60.     Plaintiffs are informed and thereon allege that Richmond has not reported all SSOs that may have endangered human health or the environment as required by the 1994 Joint Permit, Self-Monitoring Program, Reporting Requirement IV.A and D.

61.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have not submitted written reports to the Regional Board and the Office of Emergency Services ("OES") for all SSOs over 1,000 gallons as required by the 2001 Joint Permit, Self-Monitoring Program, Attachment B, § III.D.2.a.

62.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have not prepared and retained onsite, a written report of all SSOs under 1,000 gallons as required by the 2001 Joint Permit, Self-Monitoring Program, Attachment B, § III.D.2.b.

63. Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have not included a summary of all SSOs during the year in Richmond's Self-Monitoring Program Annual Report as required by the 2001 Joint Permit, Self-Monitoring Program, Attachment B, § III.D.2.b.

64. Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have violated the 2001 Joint Permit, Self-Monitoring Program § II (Table 1: Schedule of Sampling Analyses and Observation), by failing to adequately monitor their discharges of dieldrin and 4,4-DDE consistently since December 2003 and employ a laboratory methodology that secures monitoring results to a sufficiently low detection limit as required by the Permit.

65. Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have violated the 2001 Joint Permit, Self-Monitoring Program § II (Table 1:  Schedule of Sampling Analyses and Observation) by failing to analyze the Richmond WWTP effluent samples for levels of settleable material in January and February 2002 and for total suspended solids as required during October 2002.

66. The 1994 Joint Permit and 2001 Joint Permit Self-Monitoring Programs all constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f). Accordingly, each day since July 14, 2000, that Richmond has failed to comply with the 1994 Joint Permit or 2001 Joint Permit, Self-Monitoring Programs is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Each day since July 17, 2002, that Veolia has failed to comply with the 2001 Joint Permit, Self-Monitoring Program is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

67. By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

68. An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**Claims Against Richmond And Veolia for Non-Storm Water Entering MS4 in Violation of NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365**

69.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

70.     Discharge Prohibition A.1 of Richmond's MS4 Permit prohibits the discharge of non-storm water (material other than storm water) into the Richmond MS4.  In addition, the 1994 Joint Permit, Discharge Prohibition A.5 and the 2001 Joint Permit, Discharge Prohibition A.6 prohibits the discharge of "any water, materials, or wastes other than storm water, which are not otherwise authorized by an NPDES permit, to a storm drain system."

71.     Plaintiffs are informed and believe, and thereon allege, that Veolia assumed responsibility for Richmond's MS4 system on or before October 15, 2004.

72.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have discharged or allowed the discharge of non-storm water into Richmond's MS4 system in the form of SSOs from the Richmond and/or WCWD collection systems and private sewer lateral lines on repeated occasions in violation of MS4 Permit Discharge Prohibition A.1, 1994 Joint Permit, Discharge Prohibition A.5, and 2001 Joint Permit, Discharge Prohibition A.6.

73.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia lack NPDES permit authorization and violate Section 301(a) of the CWA every time an SSO from the Richmond or WCWD collection systems or from private lateral sewer lines enters Richmond's MS4 system.  Accordingly, each day since July 14, 2000, that Richmond has failed to comply with the MS4 Permit, the 1994 Joint Permit, and/or the 2001 Joint Permit, Discharge Prohibitions is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Each day since October 15, 2004 that Veolia has failed to comply with the MS4 Permit and/or the 2001 Joint Permit, Discharge Prohibitions is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

74.     By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

75.     An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**Claims Against Richmond and Veolia for Non-Storm Water Discharged from MS4 in Violation of NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365**

76.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

77.     Discharge Prohibition A.1 of Richmond's MS4 Permit only authorizes the discharge of storm water and certain expressly limited types of non-storm water that is free of pollutants.  The MS4 Permit's Receiving Water Limitation B.1 also prohibits any discharge (floating matter, bottom deposits, floating oil products, substances which have deleterious effects on aquatic biota, wildlife, or waterfowl) that adversely affects beneficial uses.  In addition, 2001 Joint Permit, Discharge Prohibition A.7, prohibits stormwater discharges that cause pollution, contamination, or nuisance to the receiving water and 1994 Joint Permit, Discharge Prohibition A.6, prohibits stormwater discharges that cause pollution, contamination, or nuisance.  Veolia assumed responsibility for Richmond's MS4 system on October 15, 2004.

78.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have violated the MS4 Permit Receiving Water Limitations, B.1, the 1994 Joint Permit Discharge Prohibition A.6, and the 2001 Joint Permit Discharge Prohibition A.7 whenever SSOs from the Richmond or WCWD collection systems, private lateral sewer lines or other third party facilities have entered the Richmond MS4 and then later flowed through the Richmond and Veolia MS4 into Receiving Waters.

79.     The MS4 Permit Receiving Water Limitations, the 1994 Joint Permit Discharge Prohibitions, and the 2001 Joint Permit Discharge Prohibitions all constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since

July 14, 2000, that Richmond has failed to comply with the MS4 Permit, 1994 Joint Permit, and/or 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a). Each day since October 15, 2004, that Veolia has failed to comply with the MS4 Permit and/or 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

80.     By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

81.     An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

**Claims Against Richmond and Veolia for Causing or Contributing to Exceedances
of Water Quality Standards in Violation of NPDES
Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365.**

82.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

83.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have violated and will continue to violate Discharge Prohibition A.2 of the MS4 Permit by allowing discharges from the MS4 that cause or contribute to a violation of the MS4 Permit's Receiving Water Limitations each time SSOs immediately pass through the MS4 into Receiving Waters or when the SSOs leave behind sewage related pollutants in the MS4 that are later washed out with storm water or non-storm water flows.

84.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have violated and will continue to violate Receiving Water Limitation B.1 of the MS4 Permit by creating conditions (by discharging floating matter, bottom deposits, floating oil products, and substances which have deleterious effects on aquatic biota, wildlife, or waterfowl) that adversely affect beneficial

uses of the Receiving Waters each time Richmond discharges SSOs through the MS4 into Receiving Waters or when the SSOs leave behind sewage related pollutants in the MS4 that are later washed out with storm water or non-storm water flows.

85.    Plaintiffs are informed and believe, and thereon allege, that Richmond and Veolia have violated and will continue to violate Receiving Water Limitation B.2 of the MS4 Permit that prohibits discharges causing or contributing to exceedances of applicable water quality standards each time SSOs immediately pass through the MS4 into Receiving Waters or when SSOs leave behind sewage related pollutants in the MS4 that are later washed out with storm water or non-storm water flows.

86.    Plaintiffs are informed and believe, and thereon allege that each day that Richmond and Veolia have discharged, and continue to discharge, SSOs and/or SSO-related pollutants from the Richmond MS4 as described above additionally constitute violations of the 1994 Joint Permit Discharge Prohibition A.6 and Receiving Water Limitations, C.1.e and C.3 as well as the 2001 Joint Permit, Discharge Prohibition A.7 and Receiving Water Limitations, C.1.e and C.3.

87.    The MS4 Permit Discharge Prohibitions and Receiving Water Limitations, the 1994 Joint Permit Discharge and Receiving Water Prohibitions, and the 2001 Joint Permit Discharge and Receiving Water Prohibitions all constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since July 14, 2000, that Richmond has failed to comply with the MS4 Permit, 1994 Joint Permit, and/or 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Each day since October 15, 2004, that Veolia has failed to comply with the MS4 Permit and/or the 2001 Joint Permit is also a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

88.    By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

89.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### Claims Against Richmond and Veolia for Effluent Violations in Violation of NPDES Permit Conditions and 33 U.S.C. §§ 1311(a), 1365

90.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

91.     The Self-Monitoring Programs outlined in the 1994 Joint Permit and 2001 Joint Permit require the monitoring of the Richmond WWTP and WCWD WWTP effluent at sample points downstream of the Richmond WWTP and WCWD WWTP, respectively, on a daily, weekly, monthly, and/or semi-annual basis before these effluents are combined at the WCA owned Confluence Structure.  The 1994 Joint Permit and the 2001 Joint Permit impose various effluent limitations on the separate Richmond WWTP and WCWD effluents (before they are combined) for conventional pollutants such as five-day biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease, settleable matter, total coliform bacteria, and residual chlorine.

92.     The 2001 Joint Permit further requires pollutant monitoring of the Richmond WWTP and WCWD effluents after they are combined, before they are out of the WCA outfall.  The 1994 Joint Permit and the 2001 Joint Permit impose effluent limitations on this combined joint effluent for various pollutants including copper, cyanide, mercury, nickel, 4,4'-DDE, dieldrin, dioxin-TCDD concentration, total chlorine residual, settleable matter, oil and grease, and biochemical oxygen demand.

93.     Plaintiffs are informed and believe, and thereon allege that Richmond and Veolia have violated and continue to violate their effluent limitations for conventional and toxic pollutants.

94.     Effluent Limitations B.1 through B.6 of both the 1994 Joint Permit and 2001 Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since July 14, 2000, that Richmond has failed to comply with the effluent limitations in the 1994 Joint Permit or 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Each day since June 17, 2002, that Veolia has failed to

comply with the effluent limitations in the 1994 Joint Permit, or 2001 Joint Permit is also a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

95.    By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

96.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### NINTH CAUSE OF ACTION

**Claim Against Richmond And Veolia for Discharge of Pollutants in Violation of NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365**
**(2001 Discharge Prohibitions A.3)**

97.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

98.    Plaintiffs are informed and believe, and thereon allege, that Richmond and Veolia have bypassed sewage from the City of Richmond WWTP in violation of the 2001 Joint Permit Discharge Prohibition Section A.3.

99.    Discharge Prohibition Section A.3 of the 2001 Joint Permit prohibits bypass of untreated or partially treated wastewater to waters of the State except under limited specified conditions.  The 2001 Joint Permit authorizes bypass of individual treatment processes, for example during periods of high wet-weather flow, if the bypass is unavoidable to prevent loss of life, personal injury, or severe property damage; there is no feasible alternative; the permittee has complied with notice requirements; and the resulting sewage discharge complies fully with the effluent and receiving water limitations of the 2001 Joint Permit.

100.    Plaintiffs are informed and believe, and thereon allege, that Richmond and Veolia have discharged a blend of primary and secondary treated wastewater to Receiving Waters on numerous

occasions during high wet-weather flow.  Plaintiffs are informed and believe, and thereon allege that on all of these occasions, Richmond and Veolia have caused one or more violations of the effluent and receiving water limitations of the 2001 Joint Permit.  In addition, Richmond and Veolia have occasionally caused effluent to be discharged from the Richmond WWTP that has been bypassed around portions of the Richmond WWTP treatment equipment during conditions other than high wet-weather flow under circumstances where the bypass prohibition exceptions did not apply.  Richmond and Veolia have thus been bypassing and will continue to bypass partially treated wastewater around the Richmond WWTP's activated sludge and secondary clarification basins in violation of Discharge Prohibition Section A.3 of the 2001 Joint Permit.

101.    Plaintiffs are informed and believe, and thereon allege, that these discharges and violations are ongoing and it is likely that Richmond and Veolia will continue to violate these requirements without Court intervention.

102.    Discharge Prohibition Section A.3 of the 2001 Joint Permit constitutes an effluent limitation within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, every separate instance since July 14, 2000 when Richmond failed to comply with Discharge Prohibitions A.3 constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  Likewise, every separate instance since June 17, 2002 when Veolia failed to comply with Discharge Prohibition A.3 constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

103.    By committing the acts and omissions alleged above, Richmond and Veolia are subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

104.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

1

**TENTH CAUSE OF ACTION**

2

**Claims Against WCWD for Discharges of Pollutants Without a Permit in Violation
of the Clean Water Act 33 U.S.C. § 1311(a)**

3

4

105.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the

5

preceding paragraphs.

6

106.    Plaintiffs are informed and believe, and thereon allege, that WCWD has been discharging

7

and continues to discharge untreated, raw sewage from the WCWD collection system to the Receiving

8

Waters since at least July 14, 2000.  In addition, WCWD has discharged treated wastes or wastewater,

9

such as biosolids, at locations other than its NPDES permit authorized outfall.  For example, Plaintiffs

10

are informed and believe, and thereon allege, that on September 24, 2000, WCWD discharged 60,850

11

gallons of sanitary sewage biosolids from an 18 year old, buried, glass lined ductile iron pipe into a

12

Richmond storm drain channel on WCWD property adjacent to biosolids drying beds.  Plaintiffs are

13

informed and believe, and thereon allege, that some of the biosolids then flowed into a marsh channel

14

downstream of the storm drain channel; the marsh is a wetland adjacent and/or tributary to San

15

Francisco Bay and thus a water of the United States.

16

107.    Plaintiffs are informed and believe, and thereon allege, that WCWD does not possess an

17

NPDES permit authorizing the discharge of untreated, raw sewage or biosolids or treated sanitary

18

sewage-generated wastewaters from locations other than the designated permitted outfall.

19

108.    Plaintiffs are informed and believe, and thereon allege that WCWD therefore has violated

20

the discharge prohibition of CWA Section 301(a) by discharging untreated, raw sewage and/or treated

21

wastewater without NPDES permit authorization to Waters of the United States on several occasions

22

and that these violations are continuing.

23

109.    Each day since July 14, 2000, that WCWD has discharged, and continues to discharge

24

raw sewage and other pollutants to Waters of the United States without an NPDES permit authorizing

25

such discharges is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

26

110.    By committing the acts and omissions alleged above, WCWD is subject to an assessment

27

of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

28

111.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION

**Claims Against WCWD for Discharge of Pollutants in Violation of NPDES Permit Conditions and 33 U.S.C. §§ 1311(a), 1365**
**(1994 Discharge Prohibition A.1 and A.5 and 2001 Discharge Prohibition A. 3, A.1 and A.6)**

112.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

113.    Plaintiffs are informed and believe, and thereon allege, that WCWD has been discharging and continues to discharge raw sewage from the WCWD collection system into the Receiving Waters since at least July 14, 2000.  In addition, WCWD has discharged treated wastes or wastewater, such as biosolids, at locations other than its NPDES permit authorized outfall.

114.    CWA Section 301(a) provides that "the discharge of any pollutant by any person shall be unlawful" unless the discharger is in compliance with the terms of a permit.  33 U.S.C. § 1311(a).

115.    Discharge Prohibition Section A.3 of the 2001 Joint Permit and Discharge Prohibition Section A.1 of the 1994 Joint Permit prohibit overflow of untreated or partially treated wastewater from the WCWD collection system to waters of the State.  The Receiving Waters are all waters of the State, and thus the 2001 Joint Permit and the 1994 Joint Permit prohibit SSOs to these Receiving Waters.

116.    Discharge Prohibitions section A.1 of the 2001 Joint Permit further prohibits the discharge of treated wastewater at a location or in a manner different from that authorized by the 2001 Joint Permit, and Discharge Prohibition A.6 of the 2001 Joint Permit prohibits the discharge of any "water, materials, or wastes other than storm water, which are not otherwise authorized by an NPDES permit, to a storm drain system or waters of the State . . ."  The 2001 Joint Permit does not authorize the discharge of biosolids from any location and does not authorize the discharge of any wastewaters

except from the WCA outfall.  The 1994 Joint Permit, Discharge Prohibition Section A.5 prohibits the discharge of any "water, materials, or wastes other than storm water, which are not otherwise authorized by this NPDES permit, to a storm drain system or waters of the state . . . ."  The 1994 Joint Permit did not authorize the discharge of biosolids from any location and did not authorize the discharge of any wastewaters except from the WCA outfall.  Accordingly, WCWD has violated Discharge Prohibition Section A.1 and A.6 of the 2001 Joint Permit and/or Discharge Prohibition Section A.5 of the 1994 Joint Permit by discharging treated wastewaters, including biosolids, from locations other than the WCA outfall.

117.    Plaintiffs are informed and believe, and thereon allege, that these discharges and violations are ongoing and it is likely that WCWD will continue to violate these requirements without Court intervention.

118.    Discharge Prohibition Sections A.1 and A.5 of the 1994 Joint Permit and Discharge Prohibition Sections A.3, A.1 and A.6 of the 2001 Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, every separate instance since July 14, 2000 when WCWD failed to comply with these Discharge Prohibitions constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

119.    By committing the acts and omissions alleged above, WCWD is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

120.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

///

///

///

1

## TWELFTH CAUSE OF ACTION

2

**Claims Against WCWD for Discharge of Pollutants in Violation of NPDES Permit Conditions and 33 U.S.C. §§ 1311(a), 1365**

3

**(1994 Discharge Prohibition A.4 and 2001 Discharge Prohibition A. 2)**

4

121.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the

5

preceding paragraphs.

6

122.    Pursuant to 1994 Joint Permit and the subsequent 2001 Joint Permit, Prohibition Section

7

A.4 of the 1994 Joint Permit and Prohibition Section A.2 of the 2001 Joint Permit "prohibits the

8

discharge of wastewater that does not receive an initial dilution of at least 10:1 at all times during

9

which the Delta outflow is greater than 8,000 cubic feet per second, and 45:1 when the Delta outflow is

10

less than 8,000 cubic feet per second."

11

123.    Plaintiffs are informed and believe, and thereon allege, that since July 14, 2000, WCWD

12

has discharged untreated sewage and in violation of the dilution requirements of Section A.4 of the

13

1994 Joint Permit and Prohibition Section A.2 of the 2001 Joint Permit.  Plaintiffs are informed and

14

believe, and thereon allege that these discharges are ongoing and it is likely that WCWD will continue

15

to violate these requirements without Court intervention.

16

124.    Prohibition Section A.4 of the 1994 Joint Permit and Prohibition Section A.2 of the 2001

17

Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33

18

U.S.C. § 1365(a), (f).  Accordingly, every separate instance since July 14, 2000 when WCWD failed to

19

comply with Discharge Prohibitions A.4 and A.2 constitutes a violation of a CWA effluent limitation

20

and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

21

125.    By committing the acts and omissions alleged above, WCWD is subject to an assessment

22

of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

23

126.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. §

24

1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm

25

Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or

26

adequate remedy at law.

27

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

28

## THIRTEENTH CAUSE OF ACTION

**Claims Against WCWD for Violations of Monitoring and Reporting Requirements Imposed by NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365**

127.     Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

128.     Plaintiffs are informed and thereon allege that WCWD has not reported all overflows that may have endangered human health or the environment as required by the 1994 Joint Permit, Self-Monitoring Program, Reporting Requirement IV.A and D.

129.     Plaintiffs are informed and believe, and thereon allege that WCWD has not submitted written reports the Regional Board and the OES for all SSOs over 1,000 gallons as required by the 2001 Joint Permit, Self-Monitoring Program, Attachment B, § III.D.2.a.

130.     Plaintiffs are informed and believe, and thereon allege that WCWD has not prepared and retained onsite, a written report of all SSOs under 1,000 gallons as required by the 2001 Joint Permit, Self-Monitoring Program, Attachment B, § III.D.2.b.

131.     Plaintiffs are informed and believe, and thereon allege that WCWD has not included a summary of all SSOs during the year in WCWD's Self-Monitoring Program Annual Report as required by the 2001 Joint Permit, Self-Monitoring Program, Attachment B, § III.D.2.b.

132.     The 1994 Joint Permit and the 2001 Joint Permit, Self-Monitoring Programs constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f). Accordingly, each day since July 14, 2000, that WCWD has failed to comply with the Self-Monitoring Programs outlined in the 1994 Joint Permit or the 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

133.     By committing the acts and omissions alleged above, WCWD is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

134.     An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTEENTH CAUSE OF ACTION

### Claims Against WCWD for Non-Storm Water Entering MS4 in Violation of NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365

135.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

136.    Plaintiffs are informed and believe, and thereon allege that WCWD has repeatedly discharged non-storm water into Richmond's MS4 system in violation of MS4 Permit Discharge Prohibition A.1, 1994 Joint Permit, Discharge Prohibition A.5, and 2001 Joint Permit, Discharge Prohibition A.6.

137.    By committing the acts and omissions alleged above, WCWD is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

138.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTEENTH CAUSE OF ACTION AGAINST WCWD

### Claims Against WCWD for Effluent Violations in Violation of NPDES Permit Conditions 33 U.S.C. §§ 1311(a), 1365

139.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

140.    The Self-Monitoring Programs outlined in the 1994 Joint Permit and 2001 Joint Permit require the monitoring of the Richmond WWTP and WCWD WWTP effluent at sample points downstream of the Richmond WWTP and WCWD WWTP, respectively, on a daily, weekly, monthly, and/or semi-annual basis before these effluents are combined at the WCA owned Confluence Structure.  The 1994 Joint Permit and the 2001 Joint Permit impose various effluent limitations for conventional pollutants on the separate Richmond WWTP and WCWD effluents (before they are

combined) such as five-day biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease, settleable matter, total coliform bacteria, and residual chlorine.

141.    The 2001 Joint Permit requires the monitoring of the effluent after it is combined and once it is discharged out of the WCA outfall.  The 1994 Joint Permit and the 2001 Joint Permit impose effluent limitations on this combined joint effluent for various pollutants including copper, cyanide, mercury, nickel, 4,4'-DDE, dieldrin, dioxin-TCDD concentration, total chlorine residual, settleable matter, oil and grease, and biochemical oxygen demand.

142.    Plaintiffs are informed and believe, and thereon allege that WCWD has violated and continues to violate the joint effluent limitations for conventional and toxic pollutants.

143.    Effluent Limitations B.1 through B.6 of both the 1994 Joint Permit and 2001 Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since July 14, 2000, that WCWD has failed to comply with the effluent limitations in the 1994 Joint Permit or 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

144.    By committing the acts and omissions alleged above, WCWD is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

145.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTEENTH CAUSE OF ACTION

### Claim Against WCWD for Discharge of Pollutants in Violation
### of NPDES Permit Conditions, and 33 U.S.C. §§ 1311(a), 1365
### (2001 Discharge Prohibitions A.3)

146.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

147.    Plaintiffs are informed and believe, and thereon allege, that WCWD has bypassed sewage from the WCWD WWTP in violation of the 2001 Joint Permit Discharge Prohibition Section A.3.

148.    Discharge Prohibition Section A.3 of the 2001 Joint Permit prohibits bypass of untreated or partially treated wastewater to waters of the State except under limited specified conditions.  The 2001 Joint Permit authorizes bypass of individual treatment processes, for example during periods of high wet-weather flow, if the bypass is unavoidable to prevent loss of life, personal injury, or severe property damage; there is no feasible alternative; the permittee has complied with notice requirements; and the resulting sewage discharge complies fully with the effluent and receiving water limitations of the 2001 Joint Permit.

149.    Plaintiffs are informed and believe, and thereon allege, WCWD has occasionally caused effluent to be discharged from the WCWD WWTP that has been bypassed around portions of the WCWD WWTP treatment equipment during conditions other than high wet-weather flow under circumstances where the bypass prohibition exceptions did not apply.  WCWD have thus been bypassing and will continue to bypass partially treated wastewater around the WCWD WWTP's activated sludge and secondary clarification basins in violation of Discharge Prohibition Section A.3 of the 2001 Joint Permit.

150.    Plaintiffs are informed and believe, and thereon allege, that these discharges and violations are ongoing and it is likely that WCWD will continue to violate these requirements without Court intervention.

151.    Discharge Prohibition Section A.3 of the 2001 Joint Permit constitutes an effluent limitation within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, every separate instance since July 14, 2000 when WCWD failed to comply with Discharge Prohibitions A.3 constitutes a day of violation of a CWA effluent limitation and is thus a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).  By committing the acts and omissions alleged above, WCWD is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

152.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm

Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTEENTH CAUSE OF ACTION

### Claims Against WCA for Effluent Violations in Violation of NPDES Permit Conditions 33 U.S.C. §§ 1311(a), 1365

153.    Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

154.    WCA operates the Confluence Structure, dechlorination facility, and the WCA discharge outfall that receives, combines, and then discharges effluent from the Richmond WWTP and the WCWD WWTP.  The 1994 Joint Permit and the 2001 Joint Permit require WCA to monitor Richmond and WCWD's combined effluent before and at the point at which it is discharged out of the WCA outfall.  The 1994 Joint Permit and the 2001 Joint Permit impose effluent limitations on the combined Richmond-WCWD effluent for various pollutants including copper, cyanide, mercury, nickel, 4,4'-DDE, dieldrin, dioxin-TCDD concentration, total chlorine residual, settleable matter, oil and grease, and biochemical oxygen demand.

155.    Plaintiffs are informed and believe, and thereon allege that WCA has violated and continues to violate effluent limitations in its NPDES permits.

156.    Effluent Limitations B.1 through B.6 of both the 1994 Joint Permit and 2001 Joint Permit constitute effluent limitations within the meaning of CWA Sections 505(a) and (f), 33 U.S.C. § 1365(a), (f).  Accordingly, each day since July 14, 2000, that WCA has failed to comply with the toxic effluent limitations in the 1994 Joint Permit or 2001 Joint Permit is a separate and distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

157.    By committing the acts and omissions alleged above, WCA is subject to an assessment of civil penalties pursuant to CWA Sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

158.    An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

1         WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth hereafter.

2 **VII.**    **RELIEF REQUESTED**

3     159.    Wherefore, Plaintiffs respectfully requests that this Court grant the following relief:

4       a.     A Court order declaring Richmond, Veolia, and WCWD to have violated and to

5 be in violation of Section 301(a) of the CWA, (33 U.S.C. § 1311(a)), for their unpermitted discharges

6 of pollutants;

7       b.     A Court order declaring Richmond, Veolia, WCWD, and WCA to have violated

8 and to be in violation of Section 301(a) of the CWA, (33 U.S.C. § 1311(a)), for discharging pollutants

9 in violation of an NPDES permit;

10       c.     A Court order enjoining Richmond, Veolia, WCWD, and WCA from violating

11 the substantive and procedural requirements of their NPDES permits;

12       d.     A Court order awarding Plaintiffs their reasonable costs of suit, including

13 attorney, witness, and consultant fees, as provided for by Sections 309(d) and 505(a) of the Clean

14 Water Act, 33 U.S.C. § 1365(d);

15       e.     Award such other relief as this Court may deem appropriate.

16                    ENVIRONMENTAL ADVOCATES

18 Dated: September 21, 2005         /s/ Christopher Sproul

                            —————————————

19                           Christopher Sproul
                          Attorney for Plaintiffs Baykeeper and

20                           West County Toxics Coalition

22 Certification of Interested Entities or Persons:

23     Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named

24 parties, there is no such interest to report.

25                    /s/ Christopher Sproul

                            —————————————

26                           Christopher Sproul

27                           Attorney for Plaintiffs Baykeeper and
                          West County Toxics Coalition

28